UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEROD K. WISE,<br><br>                     Petitioner,<br><br>     v.<br><br>STEVEN JOHNSON, et al.,<br><br>                     Respondents. | Civ. Action No. 18-16130 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge

Petitioner Jerod K. Wise ("Petitioner"), an individual currently confined at East Jersey State Prison in Rahway, New Jersey, filed the instant petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1, ("Petition" or "Pet.")). For the reasons expressed below, the Court denies the Petition and also denies a certificate of appealability.

**I. BACKGROUND**[1]

Petitioner was convicted in state court of first-degree murder. The New Jersey Superior Court, Appellate Division provided the following factual summary of the proofs of trial:

> At approximately 9:00 or 10:00 p.m. on September 7, 2009, Brian Mitchell was with Johnson when both encountered [Petitioner] at the intersection of Market and Broad Streets in downtown Newark. All three men had been drinking. An argument erupted, Mitchell claimed, because [Petitioner] ripped Johnson's pants, and the men began to push and shove each other. According to Mitchell, no punches were actually thrown, and the incident ended within approximately fifteen seconds when the trio saw a police car.

---

[1] The factual background is taken from the record submitted by the parties; the facts relevant to the individual claims for relief are discussed in the analysis section of the Opinion.

At approximately 3:00 p.m. the next day, Mitchell and Johnson again encountered [Petitioner] near the same intersection. Mitchell testified that he and Johnson avoided [Petitioner] as they walked past him on the street, but as Johnson stopped to put on his iPod earphones, Mitchell heard Johnson's "body hit the side of the bus stop gate . . . ." Mitchell turned and saw Johnson clutching the side of his neck with [Petitioner] holding a knife. [Petitioner] tried to "poke" Mitchell with the knife.

Bleeding profusely, Johnson ran across Market Street and passed out. Mitchell asked people to call 911, as he took off his shirt off and tried to staunch Johnson's bleeding. When Newark police detective Tywoo Thomas responded to the scene, he saw Johnson bleeding "from the upper part of his torso," and Mitchell "holding him, trying to comfort him." Johnson was later pronounced dead at University Hospital. The autopsy revealed that he had suffered a stab wound to his neck that severed his external jugular vein and carotid artery.

Further police investigation led to two other witnesses, Leon Smith and Deborah Steele. Smith testified that he saw [Petitioner] come up from behind Johnson and stab him. Smith picked [Petitioner's] photograph out of a photo array, and also identified him at trial. Steele also picked defendant's photo from an array and indicated he was the man she saw running from the scene as Johnson collapsed. [Petitioner's] flight was recorded on surveillance video that was played for the jury.

From garbage bags in the area where [Petitioner] fled, police found a silver-colored folding knife that contained blood matching Johnson's DNA profile. They secured an arrest warrant for [Petitioner] defendant and a search warrant for his residence. Upon executing the search warrant, police recovered a pair of blood-stained blue jeans, but testing revealed the stains did not match Johnson's DNA.

After waiving his *Miranda*[2] rights, [Petitioner] gave a statement to police admitting that he stabbed Johnson. [Petitioner] claimed that he overheard Mitchell and Johnson saying they were "gonna get" him as they walked past him on the street. [Petitioner] told police he feared for his life when he stabbed Johnson.

[Petitioner] reiterated his self-defense claim in his testimony before the jury. He admitted knowing Johnson and Mitchell prior to the incident of September 7, and acknowledged that all three were

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

>members of the Bloods street gang, although [Petitioner] belonged to a different "set" of the gang. According to [Petitioner], that night, Mitchell and Johnson approached him and demanded money so they could purchase more alcohol. [Petitioner] refused, and the pair then grabbed [Petitioner's] pockets and pushed him against a wall. Mitchell punched [Petitioner] in the face.
>
>The next day, [Petitioner] was at a newsstand on Market and Broad Streets purchasing water as Mitchell and Johnson walked in his direction. [Petitioner] stated that he saw their reflection in the newsstand window, and heard the pair say "there goes the ass right there ... [l]et's get him."
>
>[Petitioner] stated that Johnson approached with "his hands up ... like he was about to attack [him]." [Petitioner] saw no weapon, but, fearing for his life, he described what happened next:
>
>>I had my blade in my back pocket. I pulled it out. The blade is easy, like when you pull it out, it could just flip out by itself . . . . So, when I did that, . . . naturally, in my head, I'm sayin[g], you know, if you pull out a knife on a person, the natural reaction the[y're] gonna do is to get back and try to move away from you. Nobody is gonna keep comin[g] towards somebody with a knife. But as he's doin[g] that, he [is] about five feet from me. So, I'm like, alright, you know, I'm just gonna swing a knife just to try to, you know, scare the guys off. Once I swung the knife, I never knew that the knife connected with the guy at all. Never knew the knife touched him. When I swung at him, he backed up. The guy hit me with like two [ ] punches at the back of my head.
>
>Mitchell and Curtis began "back-pedaling," and [Petitioner] fled immediately from the scene.

*State v. Wise*, No. A-1673-11T4, 2013 WL 6122574, at * 1-3 (N.J. Super. Ct. App. Div. Nov. 22, 2013.)

Petitioner was charged with first-degree murder, N.J.S.A. § 2C: 11-3a (count one); possession of weapon for unlawful purpose, N.J.S.A. § 2C: 39-5d (count two); and unlawful

3

possession of weapon, N.J.S.A. 2§ C: 39-4d (count three).  (*See* ECF No. 7-1, at 41-44.)[3]  A jury convicted Petitioner of first-degree murder and acquitted him of the remaining charges. *Wise*, 2013 WL 6122574 at *1.  The court sentenced Petitioner to imprisonment for life, with a thirty-five-year period of parole ineligibility.  *Id.*

      Petitioner filed a Notice of Appeal with the Appellate Division.  On November 22, 2013, the Appellate Division affirmed Petitioner's conviction, but vacated his sentence and remanded for resentencing, finding "the judge mistakenly found aggravating factor two applied."  *Id.* at *9.  The Appellate Division further found Petitioner's thirty-five-year period of parole ineligibility did not comply with the requirements of the No Early Release Act ("NERA"), N.J.S.A. § 2C: 43-7.2 and instructed the sentencing court to impose a period of parole ineligibility consistent with the requirements of NERA.  *Wise*, 2013 WL 6122574 at 9.

      On February 28, 2014, the court resentenced Petitioner to a term of life in prison, with a sixty-three-year and nine-month parole ineligibility period as required by NERA.  (*See* ECF No. 7-23.)  On June 23, 2014, the New Jersey Supreme Court denied Petitioner's petition for certification.  *State v. Wise*, 94 A.3d 910 (N.J. 2014).

      Petitioner filed a *pro se* post-conviction relief ("PCR") petition on July 16, 2014.  (ECF No. 7-9, at 3-11.)  Counsel was appointed and subsequently filed an amended PCR petition. (*Id.*, at 12-41.)  On August 5, 2016, the PCR court denied his petition.  (*See* ECF No. 7-7; *see also* ECF No. 7-26, PCR Decision Transcript.)  Petitioner appealed, and the Appellate Division affirmed the denial. *State v. Wise*, No. A-0426-16T2, 2018 WL 1321817 (N.J. Super. Ct. App. Div. March 15, 2018.)  The New Jersey Supreme Court then denied his petition for certification.  *State v. Wise*, 194 A.3d 984 (2018).

---

[3] Pin cites to ECF No. 7-1 through 7-13 are to the pagination automatically generated by the CM/ECF.

4

Petitioner filed his instant habeas petition on November 9, 2018. (ECF No. 1.) Petitioner asserts four grounds for relief. Respondents filed an answer (ECF No. 7.) Petitioner did not file a reply.

## II. STANDARDS OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v.*

5

*Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that

"[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III. ANALYSIS

### A. Petitioner's First and Third Grounds for Relief: Ineffective Assistance of Counsel, Sentencing Exposure

In his first and third grounds for relief, Petitioner argues that his due process rights were violated through trial counsel's ineffective assistance. (ECF No. 1, at 6, 9.) In his first ground for relief, Petitioner argues trial counsel was ineffective when he misadvised Petitioner as to the maximum sentencing exposure Petitioner faced if convicted at trial. (*Id.*, at 6.) In his third ground for relief, Petitioner alleges trial counsel was ineffective when he misadvised Petitioner as to the appropriateness of accepting the State's plea offer. (*Id.*, at 9.) Petitioner's first and third claims both pertain to trial counsel's advice regarding Petitioner's sentencing exposure and were addressed as one claim on appeal in the state court. Accordingly, the Court will address them together.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The

7

reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

Petitioner presented these two claims before the PCR court and the Superior Court, Appellate Division, where they were both denied. The Appellate Division summarized Petitioner's claims and the underlying facts as follows:

> [Petitioner] claimed trial counsel told him the maximum sentence he could receive if convicted at trial was life imprisonment with a thirty-year period of parole ineligibility. [Petitioner] certified that had he known he could receive the actual sentence imposed by the judge, i.e., life with a period of parole ineligibility that exceeded sixty-three years, he would have pled guilty rather than go to trial. PCR counsel included a copy of the "Pretrial Memorandum," executed by trial counsel, [Petitioner] and the prosecutor, which indicated the maximum sentence defendant faced if convicted of murder was life imprisonment with thirty years of parole ineligibility. The memorandum also stated, however, that there was no plea offer by the State.

*Wise*, 2018 WL 1321817 at *1. The PCR court explained that based on the pretrial memorandum and the status conference before trial it appeared that the State had not extended a plea offer. (ECF

9

No. 7-26, PCR Decision Transcript, at 10-11.) The PCR court reasoned: "In the absence of a plea offer, [Petitioner's] only options were to plead to the indictment without any recommendation as to sentencing . . . [or] go to trial" and "[a]ny misrepresentation . . . without a plea offer [were] of no consequence since there is nothing to compare it with or for [P]etitioner to consider." (*Id.* at 11-12.) The PCR court denied these claims, finding because there was no plea offer, Petitioner failed to show that he suffered prejudice from trial counsel's misstatement regarding the maximum period of parole ineligibility. (*Id.* at 12.)

The Appellate Division examined the record and found it unclear whether the State actually made a plea offer, explaining:

> [D]efense counsel told the judge at the status conference he "countered" with an offer that [Petitioner] would plead guilty to second-degree manslaughter and face a maximum sentence of six years, subject to NERA. The judge pressed the prosecutor whether the State would consider "aggravated manslaughter," but defense counsel acknowledged [Petitioner] would not "consider[ ] discussing" a guilty plea to aggravated manslaughter.
>
> The judge asked [Petitioner] if he wanted his attorney to continue plea negotiations, and [Petitioner] said, "[h]e can discuss further." There was a brief recess. When the proceedings resumed, the judge spoke directly to [Petitioner], who acknowledged he did not want counsel to "continue plea discussions" and rather "wish[ed] to get a trial date."

*Wise*, 2018 WL 1321817 at * 2. The Appellate Division found the record was clear that trial counsel was under the mistaken impression that Petitioner's maximum period of parole ineligibility was thirty years, thus, the court could not "presume that [Petitioner] would have terminated plea negotiations if he understood that he faced the potential for more than sixty years of parole ineligibility if convicted at trial." *Id.* The Appellate Division found the PCR court's conclusion that Petitioner suffered no prejudice because there was no plea "lack[ed] sufficient

10

support;" however, the Appellate Division affirmed the PCR court's order denying the PCR petition for a "different, purely legal reason." *Id.* Indeed the Appellate Division reasoned:

> [Petitioner] gave a statement to police in which he asserted self-defense, and reiterated this claim during his testimony at trial. [*Wise*, 2013 WL 6122574 at *2.] [Petitioner] testified that he had "swung" his knife in the victim's direction, attempting to scare him, and did not realize "the knife connected with the guy at all." [*Id.*] Trial counsel stressed self-defense in his summation, and the judge charged the jury with that affirmative defense. [*Id.* at *3.]
>
> The Court has clearly stated that a defendant is not entitled to PCR relief by claiming he would have pled guilty to a more favorable plea offer, while at the same time maintaining his innocence. *State v. Taccetta*, 200 N.J. 183, 186 (2009). In *Taccetta*, the defendant was convicted of numerous crimes and sentenced to life imprisonment, plus ten years, and a thirty-year period of parole ineligibility. *Id.* at 185. On PCR, the judge found the defendant would have accepted a more favorable plea offer but for the ineffective assistance of counsel, who misinformed the defendant of his sentencing exposure if convicted. *Id.* at 189–90. [The Appellate Division] affirmed the PCR court's grant of a new trial. *Id.* at 186.
>
> The [New Jersey Supreme] Court, however, said that as a matter of law, the "defendant could not have entered a plea of guilty" to the purported more favorable plea offer. *Id.* at 194.
>
>> [The New Jersey Supreme Court] reach[ed] that conclusion for the simple reason that a defendant does not have the right to commit perjury in giving a factual basis for a crime that he insists he did not commit. Therefore, even if defendant met the first prong of the *Strickland/Fritz*[4] standard—that his counsel was constitutionally ineffective for giving him mistaken advice about the sentencing consequences of proceeding to trial—defendant cannot satisfy the second prong of that standard, which requires a showing of prejudice.
>
> [*Id.* at 194–95.]
>
> "Our court rules and case law require a factual basis for a plea of guilty, that is, a truthful account of what actually occurred to justify the acceptance of a plea." *Id.* at 198.

---

[4] *State v. Fritz*, 105 N.J. 42 (1987).

*Wise*, 2018 WL 1321817 at *2-3.

The Appellate Division explained that Petitioner testified under oath that he acted in self-defense and "a defendant who asserts facts that imply he acted in self-defense cannot provide an adequate factual basis for a guilty plea to aggravated manslaughter." *Id.* at *3 (citing *State v. Urbina*, 221 N.J. 509, 528 (2015)).  Accordingly, the Appellate Division found "[P]etitioner could not have pled guilty to aggravated manslaughter for murder because he necessarily would have had to provide a factual basis inconsistent with his assertion of self-defense." *Id.*  Thus, even if trial counsel provided effective assistance, Petitioner could not prove prejudice as required under the *Strickland* standard.  *Id.*

This Court must apply AEDPA deference to the state court's decision unless it was contrary to or an unreasonable application of *Strickland*.  *Branch v. Sweeney*, 758 F.3d 226, 233 (3d Cir. 2014).  The state court expressly applied *Strickland* in this case and found Petitioner could not meet the prejudice prong, so this Court must be "doubly deferential" on habeas review.  *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("When the claim at issue is for ineffective assistance of counsel, AEDPA review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'  In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" (quoting *Pinholster*, 563 U.S. at 190, *Burt v. Titlow*, 571 U.S. 12, 16 (2013))).

The state court did not unreasonably apply the prejudice prong of *Strickland*.  The state court found that Petitioner could not show he was prejudiced by the alleged deficiency in trial counsel's performance.  *Wise*, 2018 WL 1321817 at *3.  The state court explained that state court precedent prohibits Petitioner from pleading guilty to aggravated manslaughter because he

12

maintained that he acted in self-defense and could not provide an adequate factual basis for a guilty plea to aggravated manslaughter. *Id.* Petitioner gave a statement to the police admitting to the stabbing but claims that he "feared for his life when he stabbed Johnson." *Wise*, 2013 WL 6122574 at *2. At trial, Petitioner testified that he acted in self-defense, stating that he heard the victim say to Brian Mitchell "there goes the ass right there. Let's get him." (ECF No. 7-19, Trial Transcript, at 34:17.) Petitioner testified that they cornered him for each side. (*Id.* at 34:18-23.) Petitioner explained that as the victim approached him, Petitioner feared for his life when he took a knife out of his pocket and swung it at the victim. (*Id.* at 35:8 to 37:6.) When trial counsel asked Petitioner why he did it, Petitioner testified: "I feared for my life, man." (*Id.* at 46:12-15.)

The state court did not unreasonably apply *Strickland* when it determined that Petitioner could not establish the prejudice prong because he maintained he acted in self-defense. *See Taccetta*, 200 N.J. at 193–95 (ruling that where defendant maintains his innocence but alleges ineffective assistance of counsel regarding a plea offer, the defendant cannot show prejudice when he could not have entered a plea of guilty because "a defendant does not have the right to commit perjury in giving a factual basis for a crime that he insists he did not commit."). Applying New Jersey law, the state court determined Petitioner could not have accepted a plea deal while maintaining he acted in self-defense. Here, the Court cannot "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Petitioner has not asserted a clearly established federal right to plead guilty while maintaining he acted in self-defense. *See North Carolina v. Alford*, 400 U.S. 25, 38 n.11 (1970) ("States may bar their courts from accepting guilty pleas from any defendants who assert their innocence."); *see also Davis v. Administrator New*

13

*Jersey State Prison*, 795 F. App'x. 100, 103 (3d Cir. 2019) ("There can be no prejudice if counsel's deficient performance merely deprived [Petitioner] of the opportunity to do something that would have been legally prohibited."). Thus, the state court's determination was not "not contrary to nor an unreasonable application of clearly established federal law." 28 U.S.C § 2254(d)(1). Petitioner is denied habeas relief as to grounds one and three.

**B. Ground Two: Jury Charge**

Petitioner next claims trial counsel was ineffective in failing to request a jury charge on passion/provocation manslaughter. (ECF No. 1, at 7-8.)

Petitioner argued on direct appeal that the trial court erred in failing to charge the jury on passion/provocation murder. *See Wise*, 2013 WL 6122574 at *3-5. The Appellate Division though found this claim meritless. *See id.* It reasoned as follows:

> "Because [Petitioner] did not object to the jury charge before the jury retired to deliberate, we will reverse only if the failure to charge the jury on passion/provocation . . . manslaughter was plain error 'clearly capable of producing an unjust result.'" *State v. Noble*, 398 N.J. Super. 574, 596, 942 A.2d 812 (App. Div.) (quoting R. 2: 10–2), certif. denied, 195 N.J. 522, 950 A.2d 908 (2008). "Not any possibility of an unjust result will suffice. The possibility must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" *Ibid.* (quoting *State v. Macon*, 57 N.J. 325, 336, 273 A.2d 1 (1971)).
>
> Passion/provocation manslaughter is a lesser-included offense of murder. *State v. Robinson*, 136 N.J. 476, 487– 89, 643 A.2d 591 (1994). As the Court recently explained, "[v]oluntary manslaughter, also known as 'passion/ provocation manslaughter,' occurs when a homicide which would otherwise be murder under [N.J.S.A.] 2C:11–3 . . . is 'committed in the heat of passion resulting from a reasonable provocation.'" *State v. Galicia*, 210 N.J. 364, 378–79 (2012) (quoting N.J.S.A. 2C:11–4(b) (2)).
>
> "Passion/provocation manslaughter has four elements: (1) reasonable and adequate provocation; (2) no cooling-off time in the period between the provocation and the slaying; (3) a defendant who actually was impassioned by the provocation; and (4) a defendant

14

who did not cool off before the slaying." *State v. Josephs*, 174 N.J. 44, 103, 803 A.2d 1074 (2002) (citing *State v. Mauricio*, 117 N.J. 402, 411, 568 A.2d 879 (1990)). "The first two elements of the offense are objective; thus, if they are supported by the evidence, the trial court should instruct the jury on passion/provocation manslaughter, leaving the determination of the remaining elements to the jury." *Ibid.* (citing *Robinson*, *supra*, 136 N.J. at 491, 643 A.2d 591.) "In determining whether to give a passion/provocation instruction, a trial court should look at the evidence in a light most favorable to defendant." *Noble*, *supra*, 398 N.J. Super. at 597, 942 A.2d 812 (citing *Mauricio*, *supra*, 117 N.J. at 412, 568 A.2d 879).

The Appellate Division explained that even if the court found a reasonable jury could find that the passage of time between the altercation between the victim and Petitioner the evening before the stabbing and the actual stabbing the following day was insufficient for Petitioner to have cooled down, Petitioner was still not entitled to a passion/provocation instruction. *Wise*, 2013 WL 6122574 at *5. The court reasoned:

> [I]t is undisputed that when the fatal confrontation occurred, only defendant was armed. "'[M]utual combat' can in certain circumstances give rise to passion/provocation mitigation." *Galicia*, *supra*, 210 N.J. at 380 (quoting *State v. Crisantos*, 102 N.J. 265, 274, 508 A.2d 167 (1986)). "However, that combat 'must have been waged on equal terms and no unfair advantage taken of the deceased,' unlike a setting in which the defendant uses a deadly weapon against an unarmed victim." *Ibid.* (quoting *Crisantos*, *supra*, 102 N.J. at 274, 508 A.2d 167).
>
> Thus, while the altercation the night before the stabbing was mutual combat essentially waged on equal terms, it is undisputed that Johnson was unarmed when stabbed during the second altercation. While [Petitioner] contends that Johnson uttered threatening words, words alone are insufficiently provocative so as to entitle defendant to the benefit of the passion/provocation charge. *See Viera*, *supra*, 346 N.J. Super. at 215, 787 A.2d 256 ("[O]rdinarily words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter.") (citation omitted).
>
> Moreover, "the offense is not manslaughter where the defendant alone is armed." *Id.* at 216, 787 A.2d 256 (citing *Crisantos*, 102 N.J. at 274, 508 A.2d 167); *see also Galicia*, *supra*, 210 N.J. at 385 (passion/provocation did not apply where "the victim ... did not die

15

> in a physical altercation 'waged on equal terms'"). In short, the evidence in this case was insufficient to permit a reasonable juror to conclude defendant fatally stabbed Johnson in the neck while "in a fury provoked by emotion or a violent attack." *Galicia*, *supra*, 210 N.J. at 369. Failure to give passion/provocation manslaughter instructions was not plain error.

*Wise*, 2013 WL 6122574 at *5.

On collateral appeal before the PCR court, Petitioner argued that trial counsel was ineffective for failing to request a passion/provocation jury charge. (*See* ECF No. 7-9.) The PCR court dismissed the claim, finding Petitioner had raised the claim on direct appeal and that the denial of the claim on direct appeal foreclosed Petitioner from raising the claim on PCR appeal. (ECF No. 7-26, PCR Decision Transcript, at 8:20-9:13 (citing New Jersey Court Rule 3:22-5.)) Petitioner failed to raise his ineffective assistance of counsel claim on appeal to Superior Court, Appellate Division. *See Wise*, 2018 WL 1321817 at *1, n. 1.

As an initial matter, it is debatable whether the instant ineffective assistance of counsel claim was properly exhausted because Petitioner abandoned the claim on appeal to the Appellate Division. However, the Court need not determine if the claim is properly exhausted because a habeas court can, if appropriate, deny a petitioner's unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2). *See* § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Mahoney v. Bostel*, 366 F. App'x 368, 371 (3d Cir. 2010). The Court's *de novo* review applies a more liberal standard in favor of Petitioner than AEDPA deference. *See Harrington*, 562 U.S. at 101-102. Applying this more generous standard of review though, Petitioner is still not entitled to habeas relief on his claim that trial counsel was ineffective for failing to request a jury charge on passion/provocation manslaughter.

16

While the Appellate Division did not review Plaintiff's claim as an ineffective assistance of counsel claim, the court did review the underlying claim that the trial court erred in not giving a passion/provocation jury charge. The state court explained, the evidence and testimony at trial showed that the victim was unarmed when Petitioner stabbed him. The Appellate Division found under New Jersey state law that Petitioner was not entitled to a passion/provocation manslaughter jury charge. *Wise*, 2013 WL 6122574 at *5. "[I]t is not the province of a federal habeas court to re-examine state court determination on state-law questions . . . [T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 67-72 (1991).

Petitioner now argues trial counsel was ineffective for failing to request the passion/provocation jury charge. To determine if trial counsel's decision not to request the jury charge was below an objective standard of reasonableness, the Court reviews the underlying substantive claim. *See, Strickland*, 466 U.S. at 688.

Since Petitioner was the only one armed, he could not show adequate provocation necessary for a passion/provocation manslaughter jury instruction. As such, he was not entitled to the jury charge. Under New Jersey law, passion-provocation manslaughter "occurs when a homicide which would otherwise be murder ... is 'committed in the heat of passion resulting from a reasonable provocation.'" *State v. Galicia*, 210 N.J. 364, 378–79 (2012) (quoting N.J.S.A. 2C:11-4(b)(2)). Passion/provocation manslaughter has four elements: "(1) reasonable and adequate provocation; (2) no cooling-off time in the period between the provocation and the slaying; (3) a defendant who actually was impassioned by the provocation; and (4) a defendant who did not cool off before the slaying." *State v. Josephs*, 174 N.J. 44, 103 (2002) (citing *State v. Mauricio*, 117 N.J. 402, 411 (1990)); *Galicia*, 210 N.J. at 379–80. "As to the first element, the

provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Carrero*, 229 N.J. 118, 129 (2017) (internal quotation marks omitted) (quoting *Mauricio*, 117 N.J. at 413). "Words alone are insufficient to create adequate provocation, but the presence of a gun or knife can satisfy the provocation requirement." *Ibid.* (citations omitted). Additionally, for a passion-provocation manslaughter charge to be warranted based on mutual combat, that combat "'must have been waged on equal terms [with] no unfair advantage taken of the deceased,' unlike a setting in which the defendant uses a deadly weapon against an unarmed victim." *Galicia*, 210 N.J. at 380 (quoting *Crisantos*, 102 N.J. at 274, 508 A.2d 167). Having reviewed the record in this case, the evidence and testimony at trial showed that the victim was unarmed when Petitioner stabbed him. Under the relevant New Jersey law, the passion/provocation charge was not supported by the evidence as the victim was unarmed. As such, any request for a passion/provocation jury charge would have been meritless under New Jersey law.

Since the underlying substantive claim is meritless, trial counsel could not be ineffective for failing to request a charge to which the defendant was not entitled. *See Gov't of Virgin Islands v. Lewis*, 620 F.3d 359, 372 (3d Cir. 2010); *see also Johnson v. Folino*, 735 F.Supp.2d 225, 237 (E.D. Pa. 2010) (counsel could not have been ineffective for failing to request an instruction that was not warranted by the evidence presented.)" As such, Petitioner's second ground for relief is denied.

### C. Ground Four: Evidentiary Hearing

Petitioner's final ground argues that he is entitled to an evidentiary hearing. (ECF No. 1, at 10.) Petitioner argues that an evidentiary hearing is necessary on the issue of whether trial

counsel failed to appropriately advise Petitioner regarding his potential total sentencing exposure. (*Id.*). The record does not provide a sufficient basis for an evidentiary hearing.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (internal citation omitted). "A district court is required to hold an evidentiary hearing only when the petitioner presents a *prima faci*e showing that 'a new hearing would have the potential to advance the petitioner's claim.'" *Porter v. Adm'r of New Jersey State Prison*, No. 20-2048, 2021 WL 2910944, at *4 (3d Cir. July 12, 2021) (quoting *Siehl v. Grace*, 561 F.3d 189, 197 (3d Cir. 2009)). To evaluate whether this standard has been met, this Court must first determine whether the Appellate Division, as the last state court to reach the issue on its merits, issued a decision that was contrary to federal law, an unreasonable application of federal law, or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). In the absence of such a finding, the inquiry ends and Petitioner has not satisfied the § 2254(d) standard. If the Court finds the state court decision was contrary to or an unreasonable application of federal law or was based on an unreasonable determination of the facts, it must then determine whether a hearing could allow Petitioner to prove his allegation that counsel mislead him regarding his sentencing exposure.

As discussed in ground one, the Appellate Division found meritless Petitioner's claim that trial counsel was ineffective for failing to properly advise petitioner regarding his total maximum sentencing exposure. Based on a review of the facts contained in the state court record, the Court finds that Petitioner has not met his burden of proof under § 2254(d)(1). The Appellate Division's decision was neither unreasonable, contrary to established Supreme Court precedent, nor an

unreasonable application of such precedent. Therefore, the Court may not hold an evidentiary hearing on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in proceeding under 28 U.S.C. § 2254 unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court will deny Petitioner a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is denied and a certificate of appealability shall not issue. An appropriate order will be entered.

12/22/2021      HONORABLE JULIEN XAVIER NEALS
                United States District Judge